963 So.2d 1193 (2007)
Kenneth Wayne KEYS a/k/a Kenneth Wayne Keyes, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-00138-COA.
Court of Appeals of Mississippi.
May 1, 2007.
Rehearing Denied September 4, 2007.
*1195 Herbert H. Klein, attorney for appellant.
Office of the Attorney General by Jacob Ray, attorney for appellee.
Before LEE, P.J., ISHEE and CARLTON, JJ.
CARLTON, J., for the Court.
¶ 1. Kenneth Wayne Keys was convicted by a Perry County Circuit Court jury for the crime of simple assault on a police officer. On appeal, he alleges numerous errors at trial and challenges the sufficiency and weight of the evidence. Finding no *1196 reversible error, we affirm his conviction and sentence.

FACTS
¶ 2. At about 1:00 a.m. on December 14, 2002, Keys was driving a vehicle and passed Perry County Deputy Sheriff Danny Merritt, who was driving in the opposite direction. The road on which the two men were traveling is narrow. Keys testified that the deputy had his high beams on and was pulled to the side of the road as Keys passed by.
¶ 3. Deputy Merritt testified that he noticed a vehicle traveling in the middle of the road with the bright lights activated. The deputy pulled to the side of the road and flashed his bright lights at the oncoming vehicle, then activated his blue lights when the oncoming vehicle did not respond. The oncoming vehicle "seemed to get faster, [and] just kept going." At this point the deputy turned his vehicle around and began to pursue the vehicle that had just passed by.
¶ 4. After pulling in to a driveway behind Keys and approaching the stopped vehicle, the deputy noticed the smell of alcohol and asked if Keys had been drinking. Keys responded that he had not been drinking. The deputy obtained his driver's license and retrieved a portable breathalyzer device from his patrol car to administer to Keys. The deputy asked Keys to step out of his vehicle. The deputy then tried to administer the breathalyzer to Keys twice but was unsuccessful because Keys bit down on the blow tube. Keys stated that he could not blow into the device properly because he had a heart murmur. Deputy Merritt asked Keys what he thought he might register on a breathalyzer. Keys responded that he would probably register "a two." Deputy Merritt understood that to mean a .2 on the breathalyzer. The legal limit is .08. Keys agreed to blow into the device after Deputy Merritt instructed Keys to place his hands on the vehicle to be transported to the sheriff's department for a more thorough blood alcohol content test. Keys agreed to blow into the device a third time rather than be taken down to the sheriff's office to blow into the machine there. The breathalyzer reflected that Keys had a blood alcohol content of .2, well above the legal limit. After Keys failed the breathalyzer, Deputy Merritt asked Keys to place his hands on the vehicle but Keys stated that he was not going to jail. The deputy repeated the command. Keys repeated that he was not going to jail and began to back away from the deputy. Deputy Merritt reached to grab Keys and Keys began to run away. Keys ran behind a nearby shed and tripped over a wire fence. The ground area surrounding the shed was covered with obstructions including: erected wire fence, broken bricks, fallen trees, rocks, and brush. Deputy Merritt pursued Keys and also tripped, causing him to fall on top of Keys. The two men struggled but Keys managing to break free twice.
¶ 5. During the struggle, Deputy Merritt testified that Keys struck him twice, once in the temple area of the head and a second time in the mouth. Deputy Merritt decided not to pursue Keys into the woods alone because he had dropped his portable radio and flashlight during the struggle. Deputy Merritt radioed for backup from his vehicle and three other officers arrived on the scene. Keys was seen pacing and speaking to himself but then ran back into the woods before the deputies could apprehend him. Keys turned himself in to law enforcement two days after the incident. Other relevant facts are discussed in more detail below.
¶ 6. In April 2003, Keys was indicted for the crime of simple assault upon a law enforcement officer under Mississippi *1197 Code Annotated § 97-3-7(1) (Rev. 2006). On December 12, 2003, a jury convicted Keys as charged in the indictment. Keys was sentenced to five years imprisonment. His appeal has been assigned to this Court.

DISCUSSION
1. Self Incrimination
¶ 7. Keys argues that his answer to Deputy Merritt's question, concerning what Keys thought he would register on the breathalyzer, was inadmissible. Keys argues that he was under arrest at the time the question was asked, and should have been given his Miranda warning against self incrimination. Keys concludes that since he was not given his Miranda warning but was in custody, that his statement was inadmissible.
¶ 8. The State argues that the question to Keys was part of a general on the scene investigation. Luckett v. State, 797 So.2d 339, 345 (Miss.Ct.App.2001) (quoting Tolbert v. State, 511 So.2d 1368, 1375 (Miss. 1987)). The State argues that the question was asked prior to Deputy Merritt obtaining the probable cause to arrest Keys.
¶ 9. The Fifth Amendment to the United States Constitution and Article 3, Section 26 of the Mississippi Constitution protect citizens from incriminating themselves. To resolve the issue of whether the statement Keys made was made during a custodial interrogation, and therefore inadmissible absent a waiver of Miranda rights, we must first determine whether Keys was in custody and being interrogated when the statement was made. Mingo v. State, 944 So.2d 18, 25(¶ 12) (Miss.2006). The status of whether a person is "in custody" depends on "if a reasonable person would feel that they were going to jail and not just being temporarily detained." Id. (citation omitted). Due to the routine nature of the precise issue before us, we do not engage in a detailed analysis of whether Keys was in custody. This Court has previously applied United States Supreme Court precedent in holding that a motorist is not subject to custodial interrogation prior to an arrest. Levine v. City of Louisville, 924 So.2d 643, 644-45 (¶¶ 6-9) (Miss.Ct.App.2006) (discussing Berkemer v. McCarty, 468 U.S. 420, 420-39, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); Miranda v. Arizona, 384 U.S. 436, 436-44, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)); see also Millsap v. State, 767 So.2d 286, 289 (¶¶ 7-12) (Miss.Ct.App.2000) (also applying Miranda and Berkemer in concluding that a traffic stop alone is not an arrest or custodial interrogation requiring Miranda warnings).
¶ 10. Keys was being questioned about whether he had been drinking due to the smell of alcohol on him or emanating from within his vehicle. Deputy Merritt testified that Keys twice prevented the portable breathalyzer device from properly producing a reading due to biting down on the mouthpiece. The question to Keys was asked prior to the deputy obtaining an incriminating reading from the breathalyzer device. No arrest had yet been made. Keys was not subject to a custodial interrogation and did not need to receive Miranda warnings at the moment he was asked what he would register on a breathalyzer. The issue is without merit.
2. Sufficiency and Weight of Evidence
¶ 11. Keys argues that the jury convicted him with legally insufficient evidence, and against the overwhelming weight of the evidence presented against him at trial. To support his conclusion, Keys repeats his argument that evidence of his blood alcohol content should not have been allowed into evidence, including his own statement and the breathalyzer *1198 result of which Deputy Merritt testified. Keys argues that the evidence could only support a conviction for misdemeanor resisting arrest if the jury would have been allowed to consider the illegality of the arrest. Shields v. State, 722 So.2d 584 (Miss.1998). The minimum relief Keys seeks, based upon Shields, is a reversal of his conviction and a remand for sentencing on misdemeanor resisting arrest.
¶ 12. The trial court denied the defense motion for a directed verdict. We review the issue of whether the evidence was legally sufficient from a perspective that is favorable to the State. Shaw v. State, 915 So.2d 442, 448(¶ 24) (Miss.2005). Evidence is legally insufficient to convict a criminal defendant if a jury could not have found an accused guilty even with all the reasonable inferences in favor of guilt that could have been derived from the evidence. Id.
¶ 13. The State charged and had to prove that Keys "did wilfully, unlawfully and feloniously attempt to cause bodily injury to Danny Merritt by striking [him] in the face and head with his elbow and fists . . . [and that] Danny Merritt [was a] law enforcement officer . . . acting within the scope of his duty. . . ." The State produced evidence that Danny Merritt was a law enforcement officer acting within the scope of his duty when he encountered Keys. Deputy Merritt testified that Keys "struck [Merritt] in the left temple area." The deputy also testified that Keys "did a strike to my mouth . . . and he rared back for a second strike. . . ." Deputy Merritt testified that Keys used his left elbow while striking him in the temple and such a strike must have been intentional due to Keys having to extend his elbow behind his back to strike the deputy. Deputy Merritt also testified that Keys used his fist when striking him in the mouth. This testimony alone was legally sufficient evidence for the jury to convict Keys of simple assault on a law enforcement officer. The holding of Shields would assist Keys if there was legally insufficient evidence to support his conviction. Shields, 722 So.2d at 585(¶ 7).
¶ 14. The trial court also denied the motion for a new trial. We review the weight of the evidence by viewing the evidence in a light most favorable to the verdict. Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005). In reviewing the evidence, we sit as a limited thirteenth juror and will only disturb the verdict against Keys if allowing it to stand would "sanction an unconscionable injustice." Id.
¶ 15. In addition to the testimony of Deputy Merritt, Keys testified about his encounter with the deputy. Keys testified that he had consumed NyQuil, a medication containing alcohol. He testified that he consumed the medicine by drinking it directly from the bottle. Although Keys denied drinking alcohol, thirteen beer cans were found in the toolbox in the back of his truck. An empty beer can was found on the floor of his truck. During his testimony, Keys admitted that he resisted arrest because the deputy was trying to charge Keys for a crime for which Keys claims he did not commit. Keys also admitted that he "may have accidentally hit [Merritt]," but claims that any contact made with his elbow was unintentional. The testimony of both men involved in the altercation and the record before us demonstrates that allowing the jury verdict to stand would not sanction an unconscionable injustice.
3. Evidentiary Errors
¶ 16. Keys argues that the trial court erred in allowing evidence of another crime, erred in allowing the jury to speculate as to the alleged intoxication level of Keys, and erred in allowing parole officer Marion Greene to testify.
*1199 Evidence of Other Crimes; Speculation on Intoxication
¶ 17. Keys relies on caselaw to conclude that any evidence regarding alleged intoxication and blood alcohol content should not have been admitted into evidence. Jones v. State, 920 So.2d 465 (Miss.2006) (Rule 403 balancing test acts as a filter for evidence); Young v. Brookhaven, 693 So.2d 1355, 1360-61 (Miss.1997) (Intoxilyzer test is admissible for the purpose of proving probable cause to arrest); Lester v. State, 692 So.2d 755 (Miss.1997) (capital murder conviction and death penalty reversed, in part because prejudicial evidence of sexual abuse admitted at trial); McDonald v. State, 285 So.2d 177 (Miss.1973) (fair trial denied where inflammatory, irrelevant and immaterial testimony pertaining to extraneous issues and unrelated offenses was admitted); Wood v. State, 257 So.2d 193 (Miss.1972) (in a very close evidentiary case, questions about whether the defendant had been in jail were prejudicial, requiring prejudicial answers, and being repeatedly pressed upon the jury, deprived the defendant of due process of law); Watson v. State, 835 So.2d 112 (Miss.Ct.App. 2003) (affirming a felony DUI conviction and stating that defendant failed to articulate how an evidentiary ruling of the trial court resulted in prejudice); Price v. State, 752 So.2d 1070, 1077 (Miss.Ct.App.1999) (Intoxilyzer test is admissible for the purpose of proving probable cause to arrest).
¶ 18. The record reflects that the following objections were made at trial. The defense objected to Deputy Merritt testifying about the response from Keys when the deputy asked Keys what he thought the breathalyzer would indicate about his blood alcohol content. Defense counsel objected, stating, "[Your] Honor, I object to this  the hearsay. [Keys] was stopped. [Deputy Merritt] was investigating a crime and hadn't read him his rights." The trial judge responded, "[But] the statement was made by the defendant himself. Note your objection and overrule the same." After Deputy Merritt testified that Keys said that the breathalyzer would reflect a blood alcohol content of "probably about a two," the deputy was asked about the meaning of "a two." Defense counsel again objected, stating, "[Your] Honor, objection. He obviously isn't going to know what he was  he testified what he said the defendant told him. What the defendant meant, he's not going to be able to testify to." The trial court ruled that Deputy Merritt could not testify as to what Keys meant by stating "a two."
¶ 19. No objection was made to the testimony of Deputy Merritt smelling alcohol or about what the results of the portable breathalyzer after Keys properly blew into the device. The objections made at trial were concerning hearsay, and about the deputy explaining what he thought Keys meant by "a two." Keys himself later testified that he told Deputy Merritt he would probably register a blood alcohol content of "a two," but that he was only joking. The testimony of Keys himself clearly reflects that he jokingly communicated to the deputy that Keys was intoxicated above the legal limit. The testimony concerning intoxication was advanced to explain why Keys was being placed under arrest, and why a physical altercation resulted. The evidence was not advanced to prove that Keys was intoxicated, but only that there was probable cause for the arrest. The testimony came into evidence without objection raising the specific argument now raised on appeal.
¶ 20. Failing to make a contemporaneous objection during trial causes Keys to rely on plain error to raise the assignment of error on appeal. Stephens v. State, 911 So.2d 424, 432(¶ 19) (Miss.2005). Concerning objections made at trial, we *1200 are "required to consider only that portion of the assignment of error which is related to the specific objection made in the court below." Williams v. State, 445 So.2d 798, 810 (Miss.1984). The arguments concerning intoxication are waived as they do not amount to plain error.
Testimony of Parole Officer
¶ 21. Keys relies on Watson in concluding that allowing his parole officer to testify was error because there was no balancing test conducted pursuant to M.R.E. 403. Watson, 835 So.2d at 112 (affirming a felony DUI conviction and stating that defendant failed to articulate how an evidentiary ruling of the trial court resulted in prejudice). Keys argues that the testimony communicated to the jury that Keys was a prior convicted felon. The specific concern raised is that a witness was identified as a parole officer and testified that he knew the defendant. The jury was not informed that Keys had any specific acquaintance with the parole officer, or that Keys was under the supervision of a parole officer because of his previous conviction for murder.
¶ 22. After the jury had been selected, but prior to opening statements, the defense raised a concern about Perry County parole officer Marion Greene testifying. The trial judge allowed the officer to be called as a fact witness because the prosecution stated that the officer was not going to say that he was supervising Keys as a parolee. After Officer Greene was called to testify and identified himself, the defense objected to the officer being identified as a parole officer. The trial judge excused the jury and heard arguments from both the prosecution and defense. The trial judge determined that the officer could testify about what took place on the night Keys was involved in the altercation with Deputy Merritt.
¶ 23. Officer Greene was identified as a parole officer and testified to the following. He testified that he had been called out to the scene of the incident. Officer Greene was described to the jury as a "sworn officer" including that he would "carry a gun and a badge and all that good stuff." Three other officers were already on the scene, two Perry County deputy sheriffs, and an officer from New Augusta. The officers had been called out to back up Deputy Merritt. Officer Greene observed that Deputy Merritt was bleeding and had injuries to his mouth and left eye. Officer Greene testified that he knew the property well because of his relationship with the property owners. The officer testified that he and the other law enforcement officers on the scene searched for Keys on the property until about 7:00 a.m., but were unable to locate him.
¶ 24. An appellate court does not conduct a de novo review on the admissibility of evidence. Jones v. State, 904 So.2d 149, 152(¶ 7) (Miss.2001). Trial courts have the discretion to determine whether potentially prejudicial evidence possesses sufficient probative value. Id. This determination on admissibility is highly discretionary because Rule 403 "does not mandate exclusion but rather provides that the evidence may be excluded." Id. Our review is confined to "simply determine whether the trial court abused its discretion in weighing the factors and in admitting or excluding the evidence." Id.
¶ 25. Officer Greene was allowed to testify after the trial judge heard arguments from the parties on the probative value and potential prejudice of the testimony. Although no direct phrase was used to indicate a Rule 403 balancing test was conducted, an implicit Rule 403 balancing test was sufficient. Hoops v. State, 681 So.2d 521, 531 (Miss.1996) (holding that an *1201 implicit determination is present even where the "magic words" of a probative versus prejudicial balancing test are not stated). The testimony presented does not indicate that Keys and Officer Greene had any relationship. We cannot say that the trial judge abused his discretion in allowing Officer Greene to testify.
4. Prosecutorial Misconduct
¶ 26. Keys argues that the prosecution made an improper and prejudicial comment during opening arguments. The contention is that the prosecutor's comment is misleading and prejudicial because the simple assault statute provides for an increased penalty for the crime of assaulting a law enforcement officer, not extra protection for law enforcement officers. At trial, the following statement and objection were made during the prosecutor's opening statement:
[BY THE PROSECUTOR]: This is a simple assault on a police officer, which is a very, very serious crime. We give our officers this extra protection in the law because of the dangerousness of what they do.
[BY DEFENSE COUNSEL]: Your Honor, again, I object. This isn't anything about what he expects to prove.
[THE COURT]: Note your objection and overrule the same.
[PROSECUTOR CONTINUING]: And we give them that protection because they're, like Danny Merritt, out in the middle of the night protecting us. They're on the dark, dangerous road. They deal with dark, dangerous people. That's the reason.
¶ 27. An improper comment by a prosecutor will cause reversal if "the natural and probable effect of the prosecuting attorney's improper argument created unjust prejudice against the accused resulting in a decision influenced by prejudice." Flora v. State, 925 So.2d 797, 808(¶ 25) (Miss.2006) (citations omitted). As attorneys, prosecutors have broad leeway in forming arguments. Spicer v. State, 921 So.2d 292, 308 (¶¶ 31-33) (Miss. 2006). Prosecutors are restricted from employing "tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury." Id. A trial judge, not an appellate court, "is in the best position to determine if an alleged objectionable remark has a prejudicial effect." Id. (citation omitted).
¶ 28. One of the functions of punishing crime is to deter harmful actions from taking place in our society. Protection is given to individuals, and sometimes classes of people like law enforcement, by penalizing actions against them. An increased punishment for a crime functions as a deterrent. A statute providing for an increased punishment for assaulting a police officer does provide extra protection for police. The trial judge was in the best position to determine any danger of prejudice and decided the comment had no prejudicial effect. We agree with the determination of the trial judge.
5. Jury Instructions
¶ 29. Keys argues that the trial court erred in refusing to give instructions D-15 and D-16. Keys argues that the jury was not instructed on his theory of the case, that Keys had the right to resist an unlawful arrest. He argues that the issue of whether an arrest is illegal is a question of fact for the jury to decide. Murrell v. State, 655 So.2d 881, 888 (Miss.1995); Johnson v. State, 754 So.2d 576 (Miss.Ct. App.2000).
¶ 30. Refused instruction D-15 states, "[if] you determine from the evidence that the attempted arrest is unlawful, the Defendant may use reasonable force as is *1202 necessary to effect his escape, but no more. If you find from the evidence that this is what happened, you should find the Defendant not guilty." Refused instruction D-16 states, "[the] right to resist is limited to those situations where the arrest is, in fact, illegal, and the arrestor and arrestee have reason to know that it is or where the arrest is accompanied by excessive force." The trial court refused both of these instructions because a determination of whether Keys was being lawfully arrested was not a question of fact for the jury to decide. To prevent any confusion, the jury was instructed on the lesser-included offense of resisting arrest. The claim of error is confined to the issue of whether the jury was properly instructed on the right of a person to resist arrest.
¶ 31. When reviewing for error, jury instructions that were given at trial are to be read as a whole. Phillipson v. State, 943 So.2d 670, 671(¶ 5) (Miss. 2006). No error results "if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law. . . ." Id. (quoting Adams v. State, 772 So.2d 1010, 1016 (Miss.2000)). The instructions must "fairly announce the law of the case and not create injustice." Id. (citation omitted). A trial court "may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." Phillipson, 943 So.2d at (¶ 6) (quoting Adams, 772 So.2d at 1016).
¶ 32. In Johnson, this Court relied in part on Murrell in deciding whether a conviction for assault on a law enforcement officer should stand. There, the jury instruction "allowed the jury to respond with a verdict of not guilty if jurors believed that [the officer] overreacted to events in such a way as to permit [the appellant] to begin resisting." Johnson, 754 So.2d at 578(¶ 13). We went on to say that even if there was more evidence of an unlawful arrest, "a person may only use reasonable force. . . ." Id. at 579(¶ 14). The supreme court has held that it would be "unreasonable to approve a crime of violence under the name of lawful resistance." Watkins v. State, 350 So.2d 1384, 1386-87 (Miss.1977). Violent resistance is not reasonable force in resisting what is perceived to be an unlawful arrest. Here, as in Johnson, the jury was given an instruction concerning resisting a lawful arrest. The lesser-included offense instruction D-17 stated in part that if the jury found "beyond a reasonable doubt that the arrest of [Keys] was lawful, and that [Keys] did unlawfully and without justification resist such arrest," the jury could find Keys guilty of the lesser-included offense of resisting arrest.
¶ 33. In a case similar to the present situation, this Court upheld the refusal of a jury instruction concerning an illegal arrest where the evidence did not support a theory of illegal arrest. Brown v. State, 852 So.2d 607, 611(¶ 14) (Miss.Ct.App.2003) (no right to resist arrest or receive such an instruction where arrest was determined to be legal). In Brown, two officers began to investigate a suspicious vehicle and spotted open containers of alcohol inside the vehicle. Id. at 611 (¶¶ 12-15). The officers then had probable cause to arrest the occupant of the parked vehicle. Id.
¶ 34. Here, Keys filed a motion to dismiss the charge against him because there was no probable cause for Deputy Merritt to have stopped Keys. The trial judge determined that the motion was insufficient to warrant dismissal. Keys testified that he was driving in the middle of the road. *1203 The deputy testified that he pursued the vehicle because the driver was traveling in the middle of the road and did not lower the high beam lights when passing an oncoming vehicle. The deputy approached Keys after Keys had pulled into a driveway and parked his truck. The deputy noticed the smell of alcohol when speaking with Keys. The deputy interpreted the statement Keys made about blowing "a two" as an indication that Keys was intoxicated well above the legal limit. The portable breathalyzer test reflected a blood alcohol level of .2 when Keys blew into the device. A bag containing thirteen cans of beer was located in the toolbox in the bed of the truck Keys owned and was driving. There was also an empty beer can in the cab of the truck. No bottle of NyQuil was found in the vehicle. Keys denied having consumed the beer but testified that he would "nip" NyQuil, which contains alcohol, by drinking it directly out of the bottle.
¶ 35. The assault charge resulted from injuries Deputy Merritt sustained when attempting to arrest Keys. The evidence was uncontradicted that Keys engaged in a violent physical struggle with the deputy which resulted in both men sustaining multiple injuries. The trial judge determined that there was a lack of evidence to support an instruction on illegal arrest. The trial judge did not abuse his discretion in denying instructions D-15 and D-16.
6. Cumulative Error
¶ 36. Keys argues that even if the individual claims do not constitute error, their cumulative effect deprived him the right to a constitutionally fair trial. Our analysis of a claim of cumulative error has been described as follows:
upon appellate review of cases in which we find harmless error or any error which is not specifically found to be reversible in and of itself, we still have the discretion to determine, on a case by case basis, as to whether such error or errors, although not reversible when standing alone, may when considered cumulatively require reversal because of the resulting cumulative effect.
Powers v. State, 945 So.2d 386(¶ 26) (Miss. 2006) (quoting Byrom v. State, 863 So.2d 836, 847 (Miss.2003)).
¶ 37. The record and arguments before us demonstrate that Keys received a fair trial. Keys was entitled to a fair trial, not a perfect trial. Powers, 945 So.2d at 386(¶ 26) (quoting McGilberry v. State, 741 So.2d 894, 924 (Miss.1999)).
¶ 38. THE JUDGMENT OF THE PERRY COUNTY CIRCUIT COURT OF CONVICTION OF SIMPLE ASSAULT OF A POLICE OFFICER AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH SENTENCE TO RUN CONSECUTIVELY TO THE SENTENCE IN FORREST COUNTY CAUSE NO. 12,214 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.