# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-01223-COA

**DIRECT BLACK A/K/A DIRECK BLACK A/K/A DIRECK DWAYNE BLACK A/K/A DERRICK D. BLACK**  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/28/2022 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MARK KEVIN HORAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: CASEY B. FARMER |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/18/2024 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1. Direck Black was convicted and sentenced in the Tunica County Circuit Court for possession of four different types of drugs with the intent to distribute. On appeal, Black claims the trial court abused its discretion in ruling his statement to police that he had marijuana in the vehicle to be admissible and by allowing a witness to be recalled to testify to Black's inculpatory statement. In addition, Black claims the evidence was insufficient to support his convictions for possession with intent to distribute, rather than just possession. Finally, Black claims the court's errors were cumulative. Finding the evidence sufficient to support Black's convictions and finding no abuse of discretion by the trial court, we affirm

Black's convictions and sentences.

**FACTS AND PROCEDURAL HISTORY**

¶2.     On February 10, 2017, Officer Brandon Brown was patrolling Highway 61 near Robinsonville, Mississippi, when he spotted a red Camaro "weaving in and out of both lanes in between cars." Officer Brown stopped the car Black was driving. Officer Brown asked to see Black's license, which Black supplied. While Officer Brown was checking the license, Officer Anfrenee Saffold arrived at the scene. Office Saffold told Officer Brown of a marijuana smell in the vehicle.

¶3.     While Black was still seated in the car, Officer Saffold asked if Black had any drugs in his possession, to which Black responded in the negative. Officer Saffold asked Black to step out of the vehicle. While they were talking near the rear of the car, Officer Saffold asked Black again if he had any drugs in his possession. This time, Black admitted that he had "about four or five ounces of marijuana" in his vehicle. At this point, the two officers called Officer French, a K9[1] officer, to assist.

¶4.     Officer French arrived, and his drug dog "alerted," indicating the potential presence of drugs in the vehicle. The officers searched the vehicle and discovered what looked like marijuana, a rock-like substance consistent with crack cocaine, and pills. The officers also found several plastic "sandwich bags" and a measuring scale. The State crime lab ran tests on the substances and concluded that the substances were 147.397 grams of marijuana, twenty-three doses of Oxycodone, four pills of Hydrocodone, and 0.650 grams of cocaine.

---

[1] A K9 (canine) is a trained dog, often called a drug dog, which is specifically trained to smell the presence of drugs or explosives and to alert to that smell.

¶5.     Black was charged with possession of between twenty and forty dosage units of Oxycodone with intent to distribute (Count I), possession of less than two grams of cocaine with intent to distribute (Count II), possession of fewer than ten dosage units of Hydrocodone with intent to distribute (Count III), and possession of between thirty and two-hundred-fifty grams of marijuana with intent to distribute (Count IV).  A Tunica County grand jury indicted Black on these counts on August 15, 2018.  The State later amended the indictment to charge Black as a non-violent habitual offender under Mississippi Code Annotated section 99-19-81 (Supp. 2018) and as a subsequent drug offender under section 41-29-147 (Rev. 2018).

¶6.     At a pre-trial hearing, Black moved to suppress his statement he made during the stop, alleging that the statement was made without police providing him *Miranda*[2] warnings.  The trial court heard testimony from all three officers involved in the stop and subsequent arrest. Black did not testify.  The trial court found that Officer Brown had probable cause to stop Black's vehicle.  Further, the court found that Officer Saffold's testimony that he smelled marijuana from the vehicle was credible.  The trial court found that the K9 was properly trained and certified and that the smell of marijuana plus the fact that the K9 alerted gave the officers probable cause to search the vehicle.  In addition, the court found that Black was not subjected to a "custodial interrogation" during the stop because the time and place were not coercive, Black was not restrained, and the questions were "extremely short." Thus, the court reasoned *Miranda* warnings were not necessary.  The trial court denied Black's motion to

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966)

suppress.

¶7.     At trial, Officer Brown and Officer Saffold gave substantially similar testimony as their testimony during the suppression hearing.  However, the State had specifically directed the officers to avoid exposing Black's statement that he had marijuana in the vehicle.  The day after the two officers testified but before the State rested its case, the State recalled Officer Saffold for the sole purpose of introducing Black's incriminating statement.  Black's counsel objected, arguing that Black would be prejudiced.  The trial court overruled Black's objection, allowing Black's statement to be admitted through Officer Saffold's testimony.

¶8.     After the State rested its case Black moved for a directed verdict, arguing the State failed to establish he had possession of the Oxycodone, cocaine, or Hydrocodone.  The trial court denied Black's motion.  The jury found Black guilty of all counts.  The trial court sentenced  Black to serve fifteen years for Count I (Oxycodone), eight years for Count II (cocaine), ten years for Count III (Hydrocodone), and five years for Count IV (marijuana) in the custody of the Mississippi Department of Corrections.  The sentence imposed in Count II was ordered to run concurrently with Count I, the sentence imposed in Count III was ordered to run consecutively to Counts I and II, and the sentence imposed in Count IV was ordered to run consecutively to Counts I, II, and III.  Black filed a "Motion for Judgment of Acquittal Notwithstanding the Verdict or in the Alternative, Motion for a New Trial," which was denied.  Black appealed.

## STANDARD OF REVIEW

¶9.     "The standard of review for evidentiary rulings is abuse of discretion." *Cook v. State*,

4

161 So. 3d 1057, 1065 (¶21) (Miss. 2015). We review de novo a trial court's ruling on the legal sufficiency of the evidence. *Barnett v. State*, 315 So. 3d 458, 562 (¶21) (Miss. 2021).

## DISCUSSION

¶10. Black claims four issues on appeal: (1) the trial court erred by failing to suppress Black's statement given to police during the traffic stop; (2) the trial court erred by allowing the State to recall Officer Saffold to the stand; (3) the evidence against Black was insufficient to support the convictions of possession of controlled substances with intent to distribute; and (4) cumulative error warrants reversal.

### (1) Admitting Black's Statement

¶11. Black claims that the trial court erred by admitting his statement that he had "about four or five ounces of marijuana" in his vehicle. Black argues that the police escalated his simple traffic stop to custodial interrogation because he was asked to step out of his vehicle and was not free to leave.

¶12. "*Miranda* warnings must be given before a suspect is subjected to custodial interrogation." *Johnson v. State*, 326 So. 3d 1019, 1023 (¶14) (Miss. Ct. App. 2021) (quoting *Batiste v. State*, 121 So. 3d 808, 857 (¶121) (Miss. 2013)). However, most routine traffic stops are not considered custodial interrogations. *Id.* The United States Supreme Court in *Berkemer v. McCarty*, 468 U.S. 420 (1984), explained:

> Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose observations lead him reasonably to suspect that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to investigate the circumstances that provoke suspicion. The stop and inquiry must be reasonably related in scope to the justification for their initiation. Typically, this means that the officer may ask

5

the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released. The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that *Terry*[3] stops are subject to the dictates of *Miranda*. The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not in custody for the purposes of *Miranda*.

*Id.* at 439-40 (citations omitted). Mississippi Courts have consistently followed *Berkemer*'s holding. *See Johnson*, 326 So. 3d at 1024 (¶15); *Keys v. State*, 963 So. 2d 1193, 1197 (¶¶7-10) (Miss. Ct. App. 2007); *Levine v. City of Louisville*, 924 So. 2d 643, 644-45 (¶¶6-10) (Miss. Ct. App. 2006); *Millsap v. State*, 767 So. 2d 286, 289-90 (¶¶7-12) (Miss. Ct. App. 2000).

¶13. Black claims he was "in custody" when he made his incriminating statement because the traffic stop had already begun before his statement and the stop was escalated by Officer Saffold after he (Black) was asked to leave the vehicle to answer more questions. "The status of whether a person is in custody depends on if a reasonable person would feel that they were going to jail and not just being temporarily detained." *Keys*, 963 So. 2d at 1197 (¶9).

¶14. The record does not support Black's claim that he was in custody during the "escalation" of his traffic stop. Black was not restrained while he was outside of his vehicle. The officers asked Black short and succinct questions to address Officer Saffold's concerns about the smell of marijuana. Black points to Officer Saffold's testimony at trial that Black

---

[3] *Terry v. Ohio*, 392 U.S. 1 (1968).

6

was not free to leave. However, the traffic stop was still ongoing when Black made his statement. Black has not shown how his stop was more coercive than an ordinary traffic stop or *Terry* stop.

¶15. The record and caselaw support the trial court's finding that Black's statement was admissible at trial. Therefore, this decision was not an abuse of discretion.

### (2) Recalling Officer Saffold

¶16. Black claims that the trial court abused its discretion by allowing the State to recall Officer Saffold to the stand after his initial testimony was completed.

¶17. "There is no hard and fast rule that a witness, once her testimony is complete, cannot be recalled to the stand. That is a matter vested in the sound discretion of the trial court." *Ellis v. State*, 799 So. 2d 159, 161 (¶7) (Miss. Ct. App. 2001) (citing MRE 611(a); *Ellis v. State*, 661 So. 2d 177, 179 (Miss. 1995)). We look to whether Black suffered actual prejudice from Officer Saffold's testimony after being recalled. *Id.*

¶18. In this instance, Black was not prejudiced by Officer Saffold's testimony. Officer Saffold was recalled for the sole purpose of introducing Black's admission that he had "four or five ounces of marijuana" in the vehicle. While the trial court noted that the statement itself was prejudicial, Black's defense was not prejudiced. The State was still pursuing its case-in-chief when it recalled Officer Saffold. The court found that Black was aware that his statement was admissible after the denial of his motion to suppress, so he did not suffer undue surprise. In addition, the court found that it would be easy to adjust the jury instructions to deal with Black's admission and that Black's counsel could cross-examine

Officer Saffold.[4]  The trial court did not abuse its discretion by allowing Officer Saffold to be recalled.

¶19.    Even if it was an error to allow Officer Saffold to be recalled, any error was harmless. "Simply showing an error in ruling on admissibility of evidence does not require reversal unless some prejudice to the defense arising from this erroneous ruling can be shown." *Id.* The officers had probable cause to search Black's vehicle with the smell of marijuana and with the K9 alerting to the potential presence of drugs.  The drugs, scale, and sandwich bags would have been discovered even if Black had not admitted to possessing the marijuana. Furthermore, Black's admission was not necessary for the State to prove that Black possessed the drugs and that he intended to sell them.

### (3)    Sufficiency of the Evidence

¶20.    Black claims that the evidence presented at trial was insufficient to sustain the "enhancement" from possession to possession with intent to distribute.  The State argues that Black waived this argument by failing to address this issue in his motion for a directed verdict.  In addition, the State argues that the intent element was met with circumstantial evidence.

¶21.    When reviewing a challenge to the legal sufficiency of evidence, "[a]ll credible evidence that is consistent with guilt must be accepted as true, and the State is given the benefit of all favorable inferences that may be reasonably drawn from the evidence." *Barnett*, 315 So. 3d at 462 (¶21) (quoting *Haynes v. State*, 250 So. 3d 1241, 1244 (¶6) (Miss.

---

[4]  Black did cross-examine Officer Saffold after his testimony.

2018)). "If the facts and inferences so considered point in favor of the defendant on *any* element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, this Court must reverse and render." *Id.* (quoting *Henley v. State*, 136 So. 3d 413, 415-16 (¶8) (Miss. 2014)). "However, we must affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Alford v. State*, 367 So. 3d 1013, 1017 (¶9) (Miss. Ct. App. 2023).

¶22. When Black made his motion for a directed verdict, he only challenged the element of possession of the Oxycodone, cocaine, and Hydrocodone. Black's post-trial motion discussed the sufficiency of the evidence, but he failed to argue the specific issue of the element of intent to distribute. The State, citing *Griffin v. State*, 269 So. 3d 337 (Miss. Ct. App. 2018), argues that Black waived this issue. We agree.

¶23. "[A] motion for a directed verdict on the grounds that the State has failed to make out a prima facie case must state specifically wherein the State has failed to make out a prima facie case. Motions for a directed verdict must be specific and not general in nature." *Id.* at 350 (¶40) (quoting *Sheffield v. State*, 749 So. 2d 123, 126 (¶10) (Miss. 1999)). "Post-trial motions for a judgment notwithstanding the verdict (JNOV) or a new trial require the same specificity." *Id.* Because Black failed to address the intent to distribute element in his directed verdict and post-trial motion, this issue is procedurally barred. *Id.* at (¶41).

¶24. Even if Black had not waived this issue, the issue is without merit. "Intent to sell or distribute contraband may be established by inference from circumstantial evidence."

9

*Campbell v. State*, 118 So. 3d 598, 604 (¶15) (Miss. Ct. App. 2012) (quoting *Boyd v. State*, 634 So. 2d 113, 115 (Miss. 1994)). "[I]ntent is a question of fact to be gleaned by the jury from the facts shown in each case." *Id.* The supreme court in *Boyd* explained:

> [P]roof of possession with an intent to distribute or sell should not be based solely upon surmise or suspicion. There must be evidentiary facts which will rationally produce in the minds of jurors a certainty, a conviction beyond reasonable doubt that the defendant did in actual fact intend to distribute or sell [drugs], not that he might have such intent. It must be evidence in which a reasonable jury can sink its teeth.

*Boyd*, 634 So. 2d at 115 (quoting *Stringfield v. State*, 588 So. 2d 438, 440 (Miss. 1991)).

¶25. When Black was stopped by police, he was the only person in the vehicle. Officers found four different types of drugs in varying amounts, along with plastic bags and a scale. The quantity of the drugs found was indicative of more than a personal-use amount. This Court has found that plastic bags and a scale may be indicative of a defendant's intent to sell. *Alford*, 367 So. 3d at 1022 (¶35); *see also Johnson*, 252 So. 3d at 55 (¶19). Since the State is given all favorable inferences that can be reasonably drawn from the evidence, and all credible inferences that are consistent with guilt are taken as true, a rational trier of fact could have found Black guilty of possession with intent to distribute beyond a reasonable doubt for all elements for each of the counts. Therefore, the evidence was sufficient to sustain Black's convictions of possession with intent to distribute.

**(4)    Cumulative Error**

¶26. Black claims that cumulative errors combined to warrant reversal of his case. "Under the cumulative-error doctrine, individual errors may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a

fundamentally fair trial." *Abram v. State*, 309 So. 3d 579, 586-87 (¶22) (Miss. Ct. App. 2020). "However, where there is no error in part, there can be no reversible error to the whole." *Id.* at 587 (quoting *Harris v. State*, 970 So. 2d 151, 157 (¶24) (Miss. 2007)). Finding no error and the evidence more than sufficient, there is no reversible error in this case.

## CONCLUSION

¶27. The trial court did not abuse its discretion by admitting Black's admission regarding his possession of marijuana or by recalling Officer Saffold to testify to Black's admission. In addition, the evidence was sufficient to support Black's convictions of possession of the four drugs with the intent to distribute. Finally, there is no reversible error under the cumulative-error doctrine.

¶28. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J.**

**WESTBROOKS, J., DISSENTING:**

¶29. On appeal, Black raised the issue that his statements made to law enforcement officers should have been suppressed during his trial. The majority finds that the trial court did not abuse its discretion by allowing the statements to come in. Because I would find that the statements Black made to law enforcement officers should have been suppressed, I respectfully dissent.

¶30. Typically, "for an officer to make an arrest, he must first have probable cause."

*Johnston v. State*, 853 So. 2d 144, 146 (¶8) (Miss. Ct. App. 2003). The majority cites the United States Supreme Court decision in *Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984), for stating that "a policeman who lacks probable cause but whose observations lead him reasonably to suspect that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to investigate the circumstances that provoke suspicion." However, that standard would not apply to Black's circumstances because there was not an absence of probable cause.

¶31. This Court has held that "[w]hen an officer determines an illegal substance is in plain view, the officer then has probable cause to make an arrest and search the vehicle." *Anderson v. State*, 127 So. 3d 317, 321 (¶11) (Miss. Ct. App. 2013) (quoting *Mosley v. State*, 89 So. 3d 41, 46 (¶15) (Miss. Ct. App. 2011)). "[T]he Mississippi Supreme Court has correlated 'plain smell' to the plain view doctrine, holding that the sense of smell is no less trustworthy than the sense of sight." *Mason v. State*, 42 So. 3d 629, 634 (¶14) (Miss. Ct. App. 2010) (citing *Dies v. State*, 926 So. 2d 910, 918 (¶23) (Miss. 2006)). Further, "if an officer clearly smells contraband, such as marijuana, that smell can establish probable cause and the right to search the vehicle and its passengers." *Id*.

¶32. In the current case, Officer Saffold believed he smelled marijuana in the vehicle and even voiced this belief to Officer Brown. This would meet the plain smell threshold that our Court and the supreme court have found to be sufficient as probable cause to believe contraband existed.

¶33. Accepting that probable cause existed, the focus should be on whether Black made

the statements to law enforcement officers while he was subjected to a custodial interrogation. A "'custodial interrogation' means the suspect is both in custody and undergoing interrogation." *Batiste v. State*, 121 So. 3d 808, 857-58 (¶121) (Miss. 2013). "A suspect is in custody when his right to freely leave has been restricted." *Roberts v. State*, 53 So. 3d 803, 808 (¶10) (Miss. Ct. App. 2010). There is no set test to determine when someone is in custody. Rather, we look at the totality of the circumstances. Our supreme court has held that

> factors to consider include: (a) the place of interrogation; (b) the time of interrogation; (c) the people present; (d) the amount of force or physical restraint used by the officers; (e) the length and form of the questions; (f) whether the defendant comes to the authorities voluntarily; and (g) what the defendant is told about the situation.

*Hunt v. State*, 687 So. 2d 1154, 1160 (Miss. 1996). An interrogation occurs when the police question the suspect in a way that they know is likely to evoke an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). *Miranda* warnings "must be given before a suspect is subjected to custodial interrogation." *Batiste*, 121 So. 3d at 857 (¶121). The majority correctly states that most routine traffic stops are not considered custodial interrogations, and thus *Miranda* rights are not required. Yet in this instance, the stop (seizure) extended beyond a mere routine traffic stop and escalated to a custodial interrogation.

¶34. In one case that recently came before this Court, the defendant also alleged that his *Miranda* rights had been violated because he was subject to custodial interrogation. *Borsi v. State*, 339 So. 3d 191, 198 (¶16) (Miss. Ct. App. 2022). In *Borsi*, the defendant was

13

traveling down the highway when he encountered a roadblock that was being conducted by the Mississippi Highway Patrol. *Id*. at 195 (¶3). When Trooper Holifield approached the vehicle, he asked the defendant for his driver's license, and while the defendant was producing his license, the officer smelled the presence of burnt marijuana. *Id*. at (¶4). Trooper Holifield then asked the defendant to pull over to the side for questioning. *Id*.

¶35. When the trooper began talking to the defendant about the smell of marijuana, the defendant "admitted that he had been smoking marijuana about two hours earlier at his campsite but later testified that he felt threatened to 'tell the truth' or he would be going to jail." *Id*. "In contrast to [the defendant's] preceding statement, [the defendant] also testified that he did not believe he would be arrested or jailed because he was obviously sober. It is uncontested that Trooper Holifield had not advised [the defendant] of his *Miranda* rights before this exchange took place." *Id*. However, "it is unclear exactly when Trooper Holifield read or gave [the defendant] his *Miranda* rights." *Id*. at 198 (¶17). "Trooper Holifield stated that he did not do so immediately after [the defendant] was stopped at the roadblock, nor did he do so at the time of the arrest. Trooper Holifield agreed with defense counsel at trial that *Miranda* warnings were given at 'the very end of the whole deal.'" *Id*.

¶36. In *Borsi*, we found that "[w]hile it appears that [the defendant's] stop may have turned custodial prior to his arrest, his initial statement that he had smoked marijuana two hours before he was stopped occurred in the first moments of the investigation of the stop, and no *Miranda* warnings were required at that point." *Id*. at 199 (¶18). The questioning occurred during the course of an ordinary traffic stop and had not yet escalated to a custodial

interrogation. Contrarily, in the case at hand, Black's stop had extended beyond a traffic stop and turned into a custodial interrogation.

¶37.    The first instance of Officer Saffold asking Black if he had any drugs in his possession was permissible because at the start of the interaction, the officers were conducting a routine traffic stop and were allowed to ask questions without administering any *Miranda* warnings. Officer Saffold asked Black to step out of the car and proceeded to ask Black again if there were any drugs in his possession. Once Officer Saffold believed he smelled marijuana in the vehicle, he had probable cause to search the car and could make an arrest if any substances were found. The majority mentions the fact that Black was not restrained while outside of his vehicle, but this is only one factor that is considered when reviewing the totality of circumstances to determine if someone is in custody.

¶38.    Another factor to consider is how many officers were present on the scene. Here, there were three officers on the scene as well as a K9. Further, Black did not believe that he was free to leave once he was asked to get out of the car and was directed to stand at the back of the vehicle. This was not something Black did voluntarily; he did it because he believed he did not have a choice. This is emphasized by Officer Saffold's testimony during trial that Black was not free to leave at this time.

¶39.    The totality of the circumstances should have been reviewed here to determine that Black was no longer involved in a temporary detainment for a routine traffic stop. Once Officer Saffold had probable cause and asked Black to get out of the vehicle and questioned Black a second time, the stop was extended to a custodial interrogation, thus requiring Black

15

to be read his *Miranda* rights. Under these facts, I would find that the statements made to law enforcement officers should have been suppressed at trial.

¶40. I further believe that if these statements had been suppressed, it would affect the issue of insufficiency of evidence that Black also raised on appeal. While there is no rule that a witness cannot be recalled to the stand after their testimony is complete, in this instance Officer Saffold was recalled to testify for the sole purpose of introducing Black's statements about being in possession of marijuana. If these statements would have been successfully suppressed during trial, Officer Saffold should not have been allowed to retake the stand with his sole purpose being to introduce the statements. For these reasons, I dissent.

**McDONALD, J., JOINS THIS OPINION.**