634 So.2d 113 (1994)
J.W. BOYD
v.
STATE of Mississippi.
No. 91-KA-00636.
Supreme Court of Mississippi.
March 17, 1994.
Ross R. Barnett, Jr., Barnett Law Firm, Thomas J. Lowe, Jr., Jackson, for appellant.
Michael C. Moore, Atty. Gen., John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PRATHER, P.J., and PITTMAN and SMITH, JJ.
SMITH, Justice, for the Court:
J.W. Boyd was indicted, tried and convicted in the Circuit Court of the First Judicial District of Hinds County, for the crime of possession of cocaine with intent to distribute and was sentenced as an habitual offender. Boyd had previously been convicted of armed robbery and receiving stolen property. This case was grounded in disputed factual issues which a jury was called on to weigh. The jury simply did not accept Boyd's version.
The physical and circumstantial evidence support the verdict. Officer Preston Carter observed Boyd on Ash Street in a characteristic drug sale scenario. After being ordered to stop by Officer Carter, Boyd ran and attempted to barricade himself in a bedroom in his mother's home. Officer Carter observed Boyd toss something near the bed. After Officer Carter secured custody of Boyd, two rocks of cocaine were found by Detective Steven Tharpe, a back up police officer, who had just arrived on the scene. The drugs were found exactly where Officer Carter stated that he had observed Boyd toss something. Money was found on Boyd's person. The characteristic drug sale scenario, the actual possession of cocaine and the money on Boyd's person make the evidence sufficient to withstand review of the verdict.
The trial judge imposed a sentence of 12 years as an habitual criminal in the custody of the Mississippi Department of Corrections and a fine of $1,000,000. Aggrieved, Boyd appeals to this Court, assigning as error the following:
I. The Evidence was Insufficient to Support the Verdict on the Matter of Intent.

*114 II. There was Insufficient Evidence to Convict on the Matter of Possession.
Upon examination of the two issues raised by Boyd, we find no error and affirm the decision of the trial court.

THE FACTS
Late on the evening of April 19, 1991, Officer Preston Carter, assigned to the Street Corner Crack Cocaine Unit of the Jackson Police Department Narcotics Division, was patrolling the 300 block of West Ash Street in Jackson in an unmarked car. When he turned onto Ash from Bailey Avenue he saw a small white car stopped in the street in the middle of the block. Officer Carter saw a man standing at the window of the white car in what Carter believed was a dope deal. Officer Carter had made a hundred or so arrests in this same area and knew this was a high drug area.
Carter testified that typically drug dealers will have two or more rocks of crack cocaine in their hands so they have the option of either eating the substance or throwing it away. When a prospective customer drives up for "curb service," the dealer will walk up and present what they have in open palm to give the customer the option of picking whichever rock they want.
Carter noticed that Boyd had his hand out in the manner described as typical of a drug deal. When Boyd saw Carter he immediately balled up his hand and stuck it in his jacket pocket. Carter recognized Boyd as someone he had encountered in the area numerous times. Boyd hurriedly walked toward the back of 335 West Ash, which is his mother's home. The white car sped off; Carter pulled his vehicle over and started toward Boyd. According to Carter, he yelled for Boyd to "Hold up." When Boyd did not stop, Carter pursued him into the house. Boyd ran into a bedroom and tried to force the door closed.
During the pushing and shoving on the door, Carter saw Boyd reach into his pocket several times. The first time Boyd took his hand out and he threw something behind him. When Boyd finally gave in, Carter ordered him to lie face down on the bed. While Carter was frisking Boyd, Detective Steven Tharpe had arrived and Carter told him that he believed Boyd had thrown something across the bed on the floor. Tharpe found two rocks of cocaine between the wall and the bed. A cocaine pipe was also found in the room. After Boyd was arrested, he was searched and $101.00 in currency was found.
Valerie Jordan, the mother of three children by Boyd's nephew, testified that she was in the front of the house at the time of the arrest. Jordan testified that Boyd was not speaking to anyone in a car but was talking to her on the porch when they saw Carter drive up. Jordan also testified that the bedroom where Boyd was arrested was occupied by Joe Stafney, who was a regular cocaine user. Stafney, the great grandson of Boyd's mother, was killed prior to the trial.
Boyd's mother, Lillie Boyd, testified that she had gone to sleep in the back of the house. She got up to go to the bathroom and heard the commotion. She told Boyd to open the bedroom door. According to her, Boyd told her he did not want Carter to beat him and she assured him Carter would not beat him. Mrs. Boyd said she told Officer Tharpe that there would be some mothballs on the floor and he replied, "OK, Mrs. Boyd, I know that." Mrs. Boyd said that she had called Boyd to come to her house to watch out the front while she went to sleep.
Darrell Beacham, a friend of Boyd's who had come by to visit, testified that Boyd was standing on the sidewalk when Carter pulled up. Beacham said he went into Joe Stafney's room before Boyd and left by another door. When he came out of the bathroom, he heard the commotion.
Boyd also testified. He said his mother called him to come to her house because the dope people were out in front of her house and she could not lie down and go to sleep. In his version of what happened, he was on the porch when Darrell Beacham said, "There's Carter and them." Boyd then walked off the porch and heard Valerie Jordan say, "There's Carter and them." As he was going back into the house Carter allegedly told him, "Come here, J.W." Boyd said, *115 "For what, man? I ain't did nothing." Boyd said he then started running.
Boyd denied throwing anything or that he had anything in his hand. He denied having any crack cocaine or a smoking pipe. Boyd did admit to smoking cocaine in the past. Boyd also testified that Officer Carter had previously arrested him for possession of cocaine "residue or something like that there." He admitted to having $102 on his person but maintained that it was money from working doing asphalt paving. Boyd's contention was that Carter had some grudge against him which was the reason for his arrest.

DISCUSSION

I. WAS THE EVIDENCE SUFFICIENT TO SUPPORT THE VERDICT ON THE MATTER OF INTENT?
Repeatedly this Court has stated that intent to sell or distribute contraband may be established by inference from circumstantial evidence. Jowers v. State, 593 So.2d 46, 47 (Miss. 1992); Jackson v. State, 580 So.2d 1217 (Miss. 1991); Bryant v. State, 427 So.2d 131, 132 (Miss. 1983); Hollingsworth v. State, 392 So.2d 515, 517 (Miss. 1981). This Court has also stated that intent is a question of fact to be gleaned by the jury from the facts shown in each case. Shanklin v. State, 290 So.2d 625, 627 (Miss. 1974).
In a series of cases this Court has wrestled with the question of intent in cases where the primary evidence supporting intent is the quantity of drugs found. See e.g., Edwards v. State, 615 So.2d 590 (Miss. 1993). In the case cited by Boyd, Stringfield v. State, 588 So.2d 438 (Miss. 1991), under very different circumstances from this case, the Court reversed a conviction of intent to distribute. Stringfield was found with fourteen grams of rock cocaine or the equivalent of four days' supply.
Stringfield did set out helpful commentary on what is required to show proof of possession with an intent to distribute or sell. The Court stated:
It therefore follows that proof of possession with an intent to distribute or sell should not be based solely upon surmise or suspicion. There must be evidentiary facts which will rationally produce in the minds of jurors a certainty, a conviction beyond reasonable doubt that the defendant did in actual fact intend to distribute or sell the cocaine, not that he might have such intent. It must be evidence in which a reasonable jury can sink its teeth.
588 So.2d at 440.
The Court noted that criminal intent may be shown by surrounding circumstances. Id. at 441. In the present case it was the surrounding circumstances and the eyewitness testimony of Officer Carter that showed the intent. Boyd was not found with a large quantity of crack cocaine but was seen by officer Carter engaged in conduct which was characteristic of selling drugs in a locale known for that activity. Officer Carter had made over one hundred arrests in this area. Specifically, Officer Carter observed Boyd standing beside a stationary vehicle in the middle of Ash Street, with his head and hand inside an open car window. By all appearances, Boyd was negotiating a sale of drugs. When Boyd noticed Officer Carter, he immediately withdrew from the car window, balled up his hand and stuck it inside a jacket pocket. The driver of the vehicle sped away immediately. Officer Carter and Boyd knew each other from previous encounters, one of which, according to Boyd, was an arrest for possession of cocaine. When spotted by Officer Carter and told to stop, Boyd ran. A short hot pursuit chase ensued. Boyd tried to barricade himself in a bedroom in his mother's house and was seen by Officer Carter tossing something from his pocket. Drugs were found where Officer Carter saw something tossed by Boyd.
The facts of this case remove it from comparison with Stringfield and Hicks v. State, 580 So.2d 1302 (Miss. 1991). The facts of both of those cases, relied upon by Boyd, failed to show some matter from which a jury could infer an intent to distribute a controlled substance. In the case sub judice there is such evidence of intent. The fact that Boyd only had two rocks of cocaine in his possession does not, under these facts, indicate that he did not intend to do what Officer Carter testified he saw Boyd doing. Officer Carter testified that "curb service" *116 sales of drugs routinely were conducted in this area with the seller having only one or two rocks of cocaine in his possession so that if police happened upon the sale, the seller could swallow or throw the contraband. The facts of this case cast it into that category of cases where a small quantity of drugs alone is not the controlling factor in deciding intent of the defendant. In fact, the small quantity conforms to the characteristic street sale of drugs that Officer Carter had routinely observed on Ash Street.
There was sufficient evidence to support the finding of intent to distribute or sell. This assignment of error is without merit.

II. WAS THERE SUFFICIENT EVIDENCE TO CONVICT ON THE MATTER OF POSSESSION?
Like the question of intent, the finding that Boyd was in possession of cocaine is based first on the testimony of Officer Carter. He testified that Boyd put something in his pocket and later threw something across the bedroom. Another officer found two rocks of crack cocaine in the area where Carter saw Boyd make the toss. In this appeal, Boyd contends that "Carter's testimony is inherently incredible and should not be believed." This Court has stated however, that it is the jury that is the sole judge of the weight and credibility of witnesses. Jackson v. State, 580 So.2d 1217, 1221 (Miss. 1991), Dixon v. State, 519 So.2d 1226, 1228 (Miss. 1988).
One of the cases Boyd relies upon is the case of Hicks v. State, 580 So.2d 1302 (Miss. 1991). Hicks clearly stands for the proposition that actual possession of drugs can be established by testimony from an officer that he observed the defendant tossing an object which was subsequently located at the same site and, upon examination of the object, it was determined to be a controlled substance. In that case, Hicks threw down a film canister containing narcotics and a police officer witnessed the act. Hicks' request for a constructive possession instruction was refused by the trial court which stated, "[T]here is clear evidence establishing actual possession by Hicks from the testimony of the detective, who actually saw Hicks with the canister." Id. at 1306.
Another case factually similar to the case at bar is Givens v. State, 618 So.2d 1313 (Miss. 1993). In Givens, the police officer on the scene in the street testified that he "observed Mr. Givens throw a bag down to the surface, to the ground." He identified the bag containing the cocaine as "the item that I saw Mr. Givens throw to the ground." Id. at 1319. This Court stated that "there remains direct evidence placing the controlled substance within the physical possession of Givens  the testimony of Officer Leonard." Id. at 1319.
Boyd's conduct during the entire time was consistent with possessing and being caught in the act of selling drugs. Both Hicks and Givens support the legal proposition that, according to the facts of this case, Boyd was in actual possession of cocaine. There was sufficient evidence presented to the jury to establish actual possession of cocaine and the totality of the facts at the scene were sufficient to allow the jury to find that Boyd intended to distribute cocaine.
The defense tried to make much of that fact that the bedroom where the drugs were found was regularly occupied by a routine user of cocaine who died before trial. Boyd argues that when the premises where the drugs or contraband are found are not in the exclusive possession or control of the accused, additional evidence must connect the accused with the contraband, citing Clayton v. State, 582 So.2d 1019, 1021 (Miss. 1991); Sisk v. State, 290 So.2d 608 (Miss. 1974). Boyd is correct in this argument. However, in the case sub judice, additional connecting evidence was given which takes this case out from under this rule. Boyd was seen by Officer Carter attempting to get rid of the cocaine which was found by Officer Tharpe. No evidence was offered that the occupant of the room had recently been there or that he was in the habit of keeping his cocaine on the bedroom floor. The cocaine was found by the backup officer, detective Steven Tharpe, exactly where Officer Carter had stated he had seen Boyd toss something.
The jury was given all the evidence from both sides and made its decision. There was *117 sufficient evidence which supported their decision. This assignment of error has no merit.

CONCLUSION
There is sufficient evidence presented that Boyd was both in possession of rock cocaine and that he intended to distribute. The testimony of the police officers supported the conclusion that Boyd was caught attempting to make a sale and that cocaine was found where he tried to dispose of it. The issues raised by the defendant are without merit. We affirm.
CONVICTION OF POSSESSION OF COCAINE WITH INTENT TO DISTRIBUTE SENTENCED AS AN HABITUAL OFFENDER TO 12 YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A FINE OF $1,000,000.00 AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and PITTMAN, BANKS and JAMES L. ROBERTS, Jr., JJ., concur.
SULLIVAN and McRAE, JJ., not participating according to IOP Rule 4.02.