# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-KA-00301-SCT

*GREGORY STALLING HOPKINS a/k/a GREGORY*
*S. HOPKINS a/k/a GREGORY HOPKINS a/k/a*
*GREG HOPKINS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/27/2013 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS, JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BRAD A. SMITH |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/01/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., LAMAR AND CHANDLER, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1. Gregory Stalling Hopkins was convicted as a habitual offender of possession of cocaine with intent to distribute. In his appeal, he challenges the sufficiency and the weight of the evidence as well as the admission of evidence of his prior bad acts. Finding no error, we affirm.

**FACTUAL BACKGROUND**

¶2.     On December 11, 2009, the Biloxi Police Department conducted an undercover drug operation at Hopkins's residence[1] located at 224 Bowen Street in Biloxi, Mississippi.  The police enlisted the help of a confidential informant (CI)[2] who called Hopkins and requested $50 worth of crack cocaine.  Hopkins agreed to the sale.  Officer Ricky Allen and Officer Mike Mason drove the CI to Hopkins's residence, searched her, wired her purse with audio surveillance equipment, and gave her  $50 in prerecorded bills to complete the buy.  Police officers stationed around the property watched the CI approach Hopkins's residence and lost sight of her only when she approached his door.  After ten minutes, the CI returned with two purses, no money, and one rock of crack cocaine, which she handed directly to the investigator.  The audio surveillance equipment recorded the entire transaction and revealed that Hopkins would not let the CI into his residence but brought her a second purse and the crack cocaine.  Once the rock tested positive for crack cocaine, the investigator signaled to secure the house.  Upon entering the house, the police found Hopkins and a woman named Hope Black in the bathroom trying to stuff a crack pipe down the sink drain after flushingsomething down the toilet.  A third person, Darryl Daniels, was found in the yard and

---

[1]Hopkins resides at 224 Bowen Street in Biloxi, Mississippi.  The residence is owned by his neighbor, who is also Darryl Daniels's mother.  However, the Biloxi Police Department lists 224 Bowen Street as Hopkins's residence and the police have had numerous interactions with Hopkins there.

[2]The CI was a well-known crack cocaine user.  Prior to the operation, she signed a contract detailing what she could and couldn't do, how the operation would work, and what she was and wasn't supposed to say.  The contract also explained that she wasn't allowed to use drugs or participate in any other illegal activity during the operation.

brought inside. After securing the house, Sergeant Aldon Helmert prepared a search warrant requesting permission to search the house for crack cocaine, confidential funds, drug paraphernalia, and anything listed in Exhibit A of the warrant. Once the judge granted the warrant, the police began a search of the house.

¶3.     In addition to the crack pipe found while securing the house, the police found: money, paperwork, and sandwich bags in the master bedroom; crack cocaine in the living room; crack cocaine and a digital scale in the kitchen; and $500 in Hopkins's pocket, fifty of which was from the CI.[3] Each of these items was recorded on the search warrant.

¶4.     The money found in the bedroom totaled $3,604 in cash and $38.56 in change. The money was found wrapped in a hat and concealed under other clothing in the bedroom dresser. Also in the bedroom dresser was a bank card with Hopkins's name on it and a car title certificate. The title had been issued to Hopkins three months before the undercover operation occurred and listed 224 Bowen Street as his address. The sandwich bags found in the bedroom were identified by an officer at trial, without objection, as the type typically used to package and distribute narcotics.

¶5.     The rock found in the living room and the substance found in the kitchen were confirmed by a drug analyst with the Mississippi Crime Laboratory to be crack cocaine. The rock weighed .1 gram but the substance in the kitchen was only a trace amount, as it was in powder form and lacked weight. Additionally, the digital scale found in the kitchen was

---

[3] Each of the bills given to the CI had been copied before the sale and then was copied again after being recovered from Hopkins's pocket.

identified by an officer as the type of scale typically used to weigh out individual crack cocaine rocks.

¶6.    The police arrested and charged Hopkins, Black, and Daniels.  Hopkins was charged with possession of cocaine with intent to distribute.

## PROCEDURAL HISTORY

¶7.    A grand jury indicted Hopkins a little more than a month after the undercover operation and, on the same day, his attorney filed a motion to suppress evidence of his prior bad acts.  One month later, his attorney filed a request for discovery, a demand for speedy trial, and additional motions to suppress.

*Pretrial Motions*

¶8.    Exactly one year after he was indicted, Hopkins went to trial.  Defense counsel filed a motion to suppress/in limine under Mississippi Rule of Evidence 404(b) to keep out any evidence of prior bad acts to show conformity.  Specifically, defense counsel sought to exclude three of Hopkins's prior convictions: a 2005 conviction for possession of a controlled substance; a 2003 conviction for transfer of a controlled substance[4]; and a 1989 conviction for two counts of possession of a controlled substance.  The State claimed that it intended to use only the 2003 transfer conviction.  After considering several cases and conducting a Rule 403(b) balancing test, the court denied the motion to suppress with regard

---

[4] Hopkins's 2003 transfer conviction was the product of a guilty plea and resulted in a sentence of ten years.

4

to Hopkins's 2003 transfer conviction.[5] Testimony regarding the conviction was elicited by the State during its direct examination of Sergeant Freeman, and a certified copy of Hopkins's 2003 sentencing order was admitted into evidence.[6]

¶9.     The defense also sought to suppress the search warrant, alleging: 1) that the officer requesting the warrant relied solely on information from other officers and failed to conduct an independent investigation, and 2) that the warrant was based on hearsay and an audio recording of an unreliable CI. The judge denied the motion to suppress but limited Helmert's testimony to what brought the police to Hopkins's residence and expressly prohibited testimony about the hearsay statements in the CI's recording.

*Motions for Mistrial*

¶10.    Defense counsel moved for mistrial three times. The first motion occurred during voir dire when a prospective juror said that he knew the defendant from being in jail.[7] The second occurred when Helmert testified that the undercover operation involved Hopkins,[8] and the

---

[5]Following the denial, defense counsel requested a limiting instruction per Mississippi Rule of Evidence 105. The instruction was was provided in the jury instructions.

[6]Defense counsel made a continuing objection to the line of questioning, which the judge overruled in conformity with his pretrial rulings.

[7]Defense counsel argues that he included the language "all the time," but that phrase was not in the record.

[8]Following this statement, the judge stopped Helmert and sent the jury out to confirm that the testimony sought was proper. Defense counsel claimed Hopkins was still entitled to a mistrial because specifics about the sale were mentioned in opening statements, the jury had already heard Helmert say that the operation involved Hopkins, and a prospective juror

third occurred when Helmert testified that Hopkins's address was in the police records database.[9] The judge denied all three motions.

*Motion for Directed Verdict*

¶11. After the State rested, the defense asked for a directed verdict, arguing that no evidence, other than mere speculation, had been presented to show that Hopkins possessed the crack cocaine and intended to sell it. The court denied the motion.

*Jury Verdict*

¶12. After two days of testimony presented by the State and no testimony from the defense, the jury reached a unanimous verdict that Hopkins was guilty of possession of cocaine with intent to distribute.

*Post-Trial Motions and Procedure*

¶13. Hopkins's defense counsel timely moved for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, challenging the sufficiency and the weight of the evidence because:

    A. There were other people in the living room with the crack cocaine when the house was secured;
    B. There was a very small amount of crack cocaine;

---

had said that he had seen Hopkins in jail. The judge noted that he stopped Helmert's testimony only because he was afraid that Helmert was going to say something directly contradictory to the court's previous ruling. He did not stop Helmert because his testimony was improper.

[9]Defense counsel argues that Helmert said that he knew Hopkins's address "because it was found in our database system from domestic calls and whatnot where Mr. Stallings was arrested." The record, however, shows that Helmert did not say anything about domestic violence.

C. The jury was unfairly and unduly prejudiced by information of a 2003 and a 1989 conviction[10]; and

D. The police relied upon information from a prostitute, referring to the CI, who said she went into the house.

A year later, the trial judge denied both the motion for JNOV and the motion for a new trial.

## LAW AND ANALYSIS

¶14. Hopkins presents three issues on appeal: 1) whether the evidence was sufficient to support the jury's verdict; 2) whether hearsay evidence regarding Hopkins's prior bad acts violated his right to confrontation and Rules 403 and 901 of the Mississippi Rules of Evidence; and 3) whether the verdict was against the overwhelming weight of the evidence.

**A.     The evidence presented was sufficient to support the jury's verdict.**

¶15.     Hopkins claims that the State failed to present sufficient evidence to support his conviction, and that the trial court subsequently erred in denying his motion for judgment notwithstanding the verdict (JNOV).  When determining whether to grant or deny a motion for JNOV, the court must view the evidence "in the light most favorable to the State."[11]  A trial court's ruling is reversed only when the evidence fails to show "beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed."[12]  If any of the elements point in

---

[10]The 1989 conviction was never introduced into evidence; in fact, the State stipulated that it would not offer that conviction into evidence.

[11]*Stringer v. State*, 2014 WL 561994, *7 (Miss. Feb. 13, 2014).

[12]*Id*. (quoting *Knight v. State*, 72 So. 3d 1056, 1063 (Miss. 2011)).

7

the defendant's favor to the extent that a reasonable jury could not have found that the defendant was guilty, then this Court should reverse and render.[13]

¶16.    For a charge of possession of cocaine with intent, the State had to prove that Hopkins "knowingly or intentionally" possessed crack cocaine, a Schedule II Controlled Substance, with the intent to transfer or distribute it.[14] There is no dispute that crack cocaine was found at Hopkins's residence.  Instead, Hopkins questions whether the evidence was sufficient to show that: 1) he possessed the crack cocaine, and 2) he intended to distribute it.

*Possession*

> Possession of a controlled substance may be actual or constructive. Constructive possession may be established where the evidence, considered under the totality of the circumstances, shows that the defendant knowingly exercised control over the contraband.  The defendant's proximity to the drugs is a factor in establishing constructive possession, but it is not determinative. Other incriminating circumstances must be present to establish constructive possession . . . . [T]his Court has affirmed a conviction based on constructive possession when: (1) The defendant owned the premises where the drugs were found and failed to rebut the presumption that he was in control of such premises and the substances within; or (2) the defendant did not own the premises but was sufficiently tied to the drugs found there by (a) exerting control over the premises when he knew or should have known of the presence of the substance or (b) placing himself in the midst of items implicating his participation in the processing of the substance.[15]

---

[13]*Johnson v. State*, 81 So. 3d 1020, 1023 (Miss. 2011).

[14]Miss. Code Ann. § 41-29-139 (Rev. 2013).

[15]*Knight v. State*, 72 So. 3d 1056, 1063 (Miss. 2011) (citing *Dixon v. State*, 953 So. 2d 1108, 1112 (Miss. 2007)) (internal citations and quotations omitted).

¶17.   Hopkins argues that he could not constructively possess the house or any of its contents because he did not own the house, and other people visited the house occasionally. This argument lacks merit.  There is both physical evidence as well as testimonial evidence that he had control over 224 Bowen Street.  The police found a bank card with his name on it and a car title issued to him that listed 224 Bowen Street as his address in the bedroom. In addition, Helmert and Freeman testified that Hopkins's address in the police database was 224 Bowen Street.  Freeman also testified that he had interacted with Hopkins numerous times at that address and that it was clear the house was under Hopkins's control.  In considering this evidence in the light most favorable to the State, there is sufficient evidence that Hopkins controlled 224 Bowen Street to an extent that he knew or should have known that the crack cocaine was there.  This is especially true since the crack cocaine was found in plain view in the living room and in the kitchen.  Therefore, the evidence supports a finding that Hopkins had constructive possession of the crack cocaine found at 224 Bowen Street.

*Intent*

¶18.   This Court must next determine whether there is sufficient evidence to support the finding that Hopkins had the intent to transfer or distribute the crack cocaine.

¶19.   This Court has long held that intent may be proven through circumstantial evidence.[16] According to Mississippi caselaw, "both the quantity of the contraband seized, as well as its

---

[16]***Hollingsworth v. State***, 392 So. 2d 515, 517 (Miss. 1981).

nature, will be determinative."[17]  In order to uphold a conviction of possession with intent, this Court considers "evidence in the light most favorable to the State and all reasonable inferences that may be drawn from that evidence."[18]  As this Court said in ***Stringfield v. State***:

> [P]roof of possession with an intent to distribute or sell should not be based solely upon surmise or suspicion. There must be evidentiary facts which will rationally produce in the minds of jurors a certainty, a conviction beyond reasonable doubt that the defendant did in actual fact intend to distribute or sell the cocaine, not that he *might* have such intent. It must be evidence in which a reasonable jury can sink its teeth.[19]

In addition to the quantity and nature of the controlled substance, incriminating evidence indicating some involvement in the drug trade [20] and the presence of packaging materials also are considered.[21]  Each of these factors must be evaluated on a case-by-case basis.

---

[17]***Coyne v. State***, 484 So. 2d 1018, 1021 (Miss. 1986).

[18]***Id.*** at 1022 (distinguishing between ***Bryant v. State***, 427 So. 2d 131 (Miss. 1983), and ***Breckinridge v. State***, 472 So. 2d 373 (Miss. 1985)).

[19]***Stringfield v. State***, 588 So. 2d 438, 440 (Miss. 1991).

[20]***Jackson v. State***, 580 So. 2d 1217, 1220 (Miss. 1991).

[21]***Dixon v. State***, 953 So. 2d 1108, 1111 (Miss. 2007) (finding that individually wrapped rocks that were similar in size and street value supported intent to distribute them).

¶20. This Court has said that neither the amount of drugs recovered nor the defendant's prior involvement in the drug trade alone is enough to establish intent.[22] In *Jowers v. State*, the police seized:

A. One large freezer bag of marijuana weighing 219 grams (7.7 oz.).
B. A small bag of marijuana weighing 84.5 grams (<3 oz.).
C. A small bag of marijuana weighing 19.9 grams (<1 oz.).
D. Two sets of portable scales.
E. A surgical tool.
F. Rolling papers.
G. $356 cash.[23]

This Court held that the recovery of those items clearly established possession but, alone, was insufficient to establish intent to distribute.[24] Similarly, in *Holland*, this Court held that evidence of "[p]ast [drug] sales alone is insufficient to prove an intent to distribute."[25]

¶21. However, when paired with additional evidence, both the amount of drugs recovered and the defendant's prior involvement in the drug trade can be used to support a conviction of possession with intent.[26] For instance in *Boyd*, an officer saw Boyd in a high-drug area

---

[22]*See Jowers v. State*, 593 So. 2d 46, 47 (Miss. 1992); *Holland v. State*, 656 So. 2d 1192, 1196 (Miss. 1995).

[23]*Jowers*, 593 So. 2d at 47.

[24]*Id.* (holding that the evidence created only a suspicion of intent and that more than a mere suspicion is required).

[25]*Holland*, 656 So. 2d at 1196.

[26]*See Boyd v. State*, 634 So. 2d 113, 115 (Miss. 1994) (noting that surrounding circumstances must be looked at in order to show criminal intent); *Swington v. State*, 742

and noticed that he acted in a manner that was "typical of a drug deal."[27] When asked to stop, Boyd ran away to his house and threw something across his bed to the floor.[28] A detective looked behind the bed and found two rocks of crack cocaine and $101 cash in Boyd's pockets.[29] Another officer testified that "sales of drugs were routinely conducted in the area with the seller having only one or two rocks of cocaine in his possession so that if police happened upon the sale, the seller could swallow or throw the contraband."[30] This Court found the evidence was sufficient to sustain Boyd's conviction for possession with intent, because "[t]he facts . . . cast [the case] into that category of cases where a small quantity of drugs alone is not the controlling factor in deciding intent of the defendant."[31]

¶22.    This Court reached a similar conclusion in *Swington v. State*.[32] In *Swington*, officers purchased a rock of crack cocaine from Antron Reed during a controlled drug buy.[33] Reed

---

So. 2d 1106, 1109 (Miss. 1999).

[27]*Boyd*, 634 So. 2d at 114.

[28]*Id.*

[29]*Id.*

[30]*Id.* at 116.

[31]*Id.*

[32]*Swington*, 742 So. 2d at 1119.

[33]*Id.* at 1109.

identified Swington as the source and said Swington was waiting for him in a local café.[34]

The officers approached Swington in the café and discovered he had one rock of crack

cocaine in his possession.[35] As a result, Swington was convicted of possession of cocaine

with intent to distribute.[36] On appeal, "Swington argue[d] that there was no evidence of

intent to distribute other than that of Reed, an admitted cocaine addict [and that] . . . one rock

of crack cocaine . . . was insufficient to establish intent to distribute."[37] This Court disagreed,

finding that "[i]t was the function of the jury to pass upon the credibility of Reed" and that

"there was ample evidence, which if believed by the jury, justified the verdict."[38] Swington's

conviction was affirmed.[39]

¶23.    Unlike in *Jowers* and *Holland*, the evidence against Hopkins consists of more than

just his possession of a small amount of cocaine *or* his prior involvement in the drug trade.

Rather, there is evidence of both Hopkins's drug possession *and* his prior involvement in the

drug trade, along with additional circumstantial evidence including Hopkins's possession of

---

[34]*Id.*

[35]*Id.*

[36]*Id.* at 1109-10.

[37]*Id.* at 1119.

[38]*Id.*

[39]*Id.*

13

a scale, packaging materials, and the buy money from the undercover operation. As in *Boyd*, possession of a small quantity of drugs was not the only evidence of intent presented by the State. And, as in *Swington*, there was direct evidence of a drug sale between Hopkins and the CI from the undercover operation.[40]

¶24. Based on the totality of the circumstances and viewing the evidence in the light most favorable to the State, any reasonable and fair-minded juror could have found that the State proved each element of the charge of possession of cocaine with intent.[41] Accordingly, the evidence is sufficient to support the jury's guilty verdict.

**B.     The trial judge properly limited testimony in order to prevent any hearsay evidence; therefore, there was no violation of the Confrontation Clause, Rule 403, or Rule 901 of the Mississippi Rules of Evidence.**

¶25. Hopkins also argues that the trial court erred by allowing the State: 1) to admit evidence regarding the undercover operation through hearsay gained from the CI; and 2) to refer to 224 Bowen Street as Hopkins's residence. The standard of review for the admission

---

[40]The evidence included the police recovering the $50 in buy money from Hopkins's pocket and the CI delivering a rock of crack cocaine to the police after visiting Hopkins's residence.

[41]The jury instructions included both a definition of constructive possession and the following list of factors that could be considered when determining intent: "(1) The quantity of the substance possessed, (2) The manner of packaging of the substance, (3) Evidence of the typical number of dosage units that could be made from the substance, (4) The street value of the substance."

14

or exclusion of evidence is abuse of discretion, and this Court will reverse only if prejudice to the accused occurs.[42]

¶26. The conversation between an informant and a trial witness "is generally inadmissible hearsay where it is part of the State's development of its proof on the merits in a criminal case, but not in other circumstances where probable cause for an arrest or search is at issue."[43] In *Swindle*, the trial judge overruled an objection similar to the one at issue here on the ground that the officer could give an explanation as to his presence at the scene.[44] This Court upheld that ruling saying that an informant's tip is admissible to the extent required to show why an officer acted as he did and was at a particular place at a particular time.[45]

¶27. Hopkins relies heavily on the *Donerson* case, in which the Court of Appeals noted "that evidence of a prior sale of cocaine can be used to show intent to distribute, as long as this evidence is not considered prejudicial and is accompanied by a limiting instruction."[46] In *Donerson*, a CI bought crack cocaine in a store's restroom as part of an undercover police

---

[42]*Palmer v. State*, 939 So. 2d 792, 794-95 (Miss. 2006).

[43]*Swindle v. State*, 502 So. 2d 652, 657 (Miss. 1987).

[44]*Id.*

[45]*Id.* at 658; *see also* *Gillett v. State*, 56 So. 3d 469, 504 (Miss. 2010) (adding that these statements are nonhearsay if used to show the effect on the listener).

[46] *Donerson v. State*, 812 So. 2d 1081, 1086 (Miss. Ct. App. 2001).

15

operation.[47] An officer monitoring the operation recognized Donerson's voice and testified that he had sold crack cocaine to the CI.[48] As a result of the voice recognition, police arrested Donerson and then obtained a search warrant for Donerson's home.[49] According to the officer, the arrest, in addition to the information received from the CI, was the probable cause for the search warrant.[50] Before trial began, the trial judge decided that "evidence of the prior sale would be allowed into evidence; however, to prevent prejudice, the seller in the prior sale could not be identified as Donerson."[51] The officer then testified during trial that "there was a drug sale on the day in question, and based upon the sale, [he] was able to get a search warrant for Donerson's residence."[52] According to Donerson, these facts were statements from the CI who should have been forced to testify; therefore, they should not have been admitted into evidence because they were based on hearsay and violated his confrontation rights.[53] The Court of Appeals held that the officer's testimony was not

[47]*Id*. at 1084.

[48]*Id*.

[49]*Id.*

[50]*Id.* at 1086.

[51]*Id.*

[52]*Id.*

[53]*Id.*

hearsay because he testified from personal knowledge about things he had observed or knew would happen.[54] Donerson also argued that the judge erred by not giving "the jury a limiting instruction stating the evidence of the sale of cocaine could only be considered as evidence of intent."[55] The Court of Appeals held that it was sufficient that the prosecution was prevented "from identifying the seller involved in the sale as Donerson," even though it was not as direct as a jury instruction.[56]

¶28.    Like ***Donerson***, Hopkins attempted to exclude evidence of his sale to the CI through a motion to suppress. The trial judge properly conducted a hearing in which Helmert, the officer who obtained the search warrant, said that he did not see the actual sale but monitored it via audio surveillance equipment. When Helmert could not recall the specifics of the transaction on cross-examination, he was allowed to listen to the recordings of the telephone call that led to the transaction and to the transaction itself. Neither of these recordings was put into evidence. Based on ***Donerson*** and Helmert's testimony, the trial judge ruled that, since the CI was not going to testify, the officers could testify only as to why they were at

---

[54]***Id.*** (stating "[h]e did not testify to anything that would be solely within the first hand knowledge of the confidential informant. Therefore, his testimony was not hearsay based on the confidential informant's statements. Because of this, Wilson's testimony can stand on its own; it is not hearsay in which the confidential informant would have to testify to get the evidence in").

[55]***Id.***

[56]***Id.*** at 1087 (finding that, by not being identified as the seller, Donerson was shielded from any prejudice that may have resulted from the introduction of the crack cocaine sale into evidence).

Hopkins's residence and could not testify to specifics of the sale without personal knowledge. The judge specifically agreed that the officers could talk about why they were at Hopkins's house, the undercover buy operation; the events leading up to the undercover buy operation; the audio of the transaction; the C.I.'s return with a substance that tested positive for crack cocaine; and the arrest, including the buy money in Hopkins's pocket, because those events were the basis of the search warrant that led to a search of Hopkins's residence and his subsequent arrest.

¶29. We agree with Hopkins that this case is different from *Donerson*, but this is not because the trial court did not go far enough in its limiting instructions. Rather, the trial court here actually went further than the trial court in *Donerson*. First, the State could not refer to the seller as Hopkins per the ruling in *Donerson*. Second, the judge provided a limiting instruction to the jury that directly addressed the issue of prior bad acts and intent. While there is a difference in selling drugs in a house and selling drugs in a store, there is enough evidence outside of this one transaction, as shown in the sufficiency-of-the-evidence analysis, that referring to 224 Bowen Street as Hopkins's residence is not based solely on statements made by the CI.

¶30. Accordingly, the judge acted entirely within his discretion to prevent any unfair prejudice to Hopkins. No hearsay evidence was introduced, and Hopkins's confrontation rights were not violated. Moreover, the trial court conducted proper Rule 403(b) balancing tests during the pretrial hearing and in response to Hopkins's motions for mistrial. Because no hearsay evidence was introduced, the trial court correctly determined that the probative value of Helmert's testimony was not outweighed by its prejudicial effect.

18

¶31.    Hopkins also challenges the authentication of the audiotape of his transaction with the CI for the first time on appeal.  Each officer mentioned at least once that there was an audiotape of the transaction and that the CI had kept in touch with police through audio surveillance.  Failure to object to any of these instances on both direct and cross-examination "constitutes a waiver of any error subsequently assigned."[57]  But, assuming arguendo that this issue was properly preserved, the State never attempted to admit the audio surveillance tape into evidence.  This Court has held that no authentication is required if the audiotape is not being admitted into evidence.[58]  Either way, Rule 901 of the Mississippi Rules of Evidence was not violated.

**C.    The jury verdict was not against the overwhelming weight of the evidence.**

¶32.    Finally, Hopkins argues that the jury's verdict is against the overwhelming weight of the evidence and that the trial court mistakenly denied his motion for new trial.  Like a motion for JNOV, "[a] motion for new trial is addressed to the discretion of the trial court."[59]  A motion for new trial "falls within a lower standard . . . [by challenging] the weight of the evidence."[60]  While "the evidence should be weighed in the light most favorable to the

---

[57]Miss. R. Evid. 103(a)(1); *Mariner Health Care, Inc. v. Estate of Edwards*, 964 So. 2d 1138, 1150 (Miss. 2007).

[58]*Liddell v. State*, 7 So. 3d 217, 220 (Miss. 2007).

[59]*Weeks v. State*, 123 So. 3d 373, 380 (Miss. 2013) (quoting *Weatherspoon v. State*, 56 So. 3d 559, 564 (Miss. 2011)).

[60]*Holloway v. State*, 809 So. 2d 598, 606 (Miss. 2000).

verdict," a new trial will be ordered if "the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand, would be to sanction an unconscionable injustice."[61]

¶33. Hopkins claims that the State's case was based solely on hearsay and speculation. However, for the reasons heretofore stated, we find that allowing the jury's guilty verdict to stand will not sanction an unconscionable injustice against Hopkins.

## CONCLUSION

¶34. Gregory Stalling Hopkins was convicted as a habitual offender for the possession of cocaine with intent to distribute. No error resulted from the admission of prior-bad-acts evidence. In addition, the trial court appropriately denied Hopkins's motion for JNOV or, in the alternative, a new trial, because the jury's verdict was sufficiently supported by the evidence and not against the overwhelming weight of the evidence. The judgment of the Harrison County Circuit Court is affirmed.

¶35. **CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DELIVER AND SENTENCE OF TWELVE (12) YEARS TO SERVE DAY FOR DAY, WITHOUT THE HOPE OF PAROLE OR PROBATION IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AS AN HABITUAL OFFENDER, AFFIRMED. CREDIT SHALL BE GIVEN FOR ANY TIME SERVED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**

---

[61] ***Long v. State***, 33 So. 3d 1122, 1125 (Miss. 2010) (citations omitted).