# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00436-COA

**PHILLIP JAMES CARSON A/K/A PHILLIP CARSON**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                    **APPELLEE**

DATE OF JUDGMENT:            03/25/2021
TRIAL JUDGE:                 HON. M. JAMES CHANEY JR.
COURT FROM WHICH APPEALED:   WARREN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      OFFICE OF STATE PUBLIC DEFENDER
                             BY: JUSTIN TAYLOR COOK
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:           RICHARD EARL SMITH JR.
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                 AFFIRMED - 06/07/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., McDONALD AND SMITH, JJ.

### WILSON, P.J., FOR THE COURT:

¶1. Phillip Carson was arrested by the Vicksburg Police Department after he failed to yield to blue lights and sirens during a traffic stop. While in pursuit of Carson, officers observed Carson throw an object out of the window of his SUV. After Carson was in custody, one of the officers found a plastic bag of crack cocaine in the area where Carson had thrown the object. The officers also found a plastic bag of crack cocaine in the console of the SUV. Carson was indicted for possession of cocaine, and he was convicted following a jury trial.

¶2.    On appeal, Carson's appointed counsel challenges the sufficiency and weight of the evidence, and Carson raises a series of issues in a pro se supplemental brief.  We conclude that there is sufficient evidence to support the jury's verdict, that the trial judge did not abuse his discretion by denying Carson's motion for a new trial, and that Carson's pro se issues are all without merit.  Accordingly, Carson's conviction and sentence are affirmed.

## FACTS AND PROCEDURAL HISTORY

¶3.    On January 3, 2020, Vicksburg Police Department Investigator Donnie Heggins was on patrol with Investigator Mario Grady and Lieutenant Jeff Merritt.  Around 11 p.m., they noticed a GMC Acadia with a temporary license plate parked with its lights on in the middle of a lane of traffic on Bowman Street.  Heggins turned on his blue lights, but the Acadia drove away and then turned right on Washington Street.  Heggins turned on his sirens and followed the Acadia.  While in pursuit, Heggins and Grady observed an object fly out of the Acadia's passenger window.  In response, Grady and Merritt radioed in to dispatch to report the object's location.[1]  The Acadia continued north on Washington Street for several blocks before finally stopping in a parking lot.  The officers arrested Carson, the driver and only occupant of the vehicle.  Grady and another officer then returned to the marked location to look for the object Carson had thrown from the Acadia.  Within a minute or two, they found a plastic bag containing a large "cookie" of crack cocaine on the street in that location.

¶4.    Merritt and Heggins then searched the Acadia, and in the center console they found a bag containing a smaller amount of crack cocaine broken into pieces and $1,167 in cash.

_____

[1] An audio recording of the officers' calls to the 911 dispatcher, which corroborated their testimony, was introduced into evidence and played at trial.

2

The Mississippi Forensics Laboratory later determined that the bag found on the street contained 13.825 grams of crack cocaine, and the bag in the console contained 0.298 grams of crack cocaine. Carson was indicted for possession of more than ten grams but less than thirty grams of cocaine. Miss. Code Ann. § 41-29-139(c)(1)(D) (Rev. 2018).

¶5. At trial, Carson's girlfriend, Kya Thomas, testified that she had rented the Acadia on December 20, 2019, because her vehicle was in the shop. She testified that around 11 p.m. on January 3, 2020, Carson borrowed the Acadia "to go pick his dad up." She did not know where Carson and his father were going. Thomas claimed that the cash found in the console of the Acadia was hers, but she denied knowledge of the cocaine found in the console. Thomas testified that during the two weeks since she had rented the Acadia, only she and Carson had access to the vehicle.

¶6. Carson likewise testified that Thomas had rented the Acadia, that the cash belonged to Thomas, and that he had never seen the cocaine found in the console. Carson claimed that he did not stop in response to the police car's lights and sirens because he believed that the officers were trying to stop a black Tahoe that "shot down Washington Street" in front of him. Carson testified that the driver of the Tahoe threw an object out of one of the Tahoe's windows. Carson denied that he threw anything out of the Acadia. Carson was adamant that if he had thrown any drugs out of his window, he would have thrown *all* the drugs out of the window, and he would have driven much faster to escape the police.

¶7. The jury found Carson guilty of possession of more than ten grams but less than thirty grams of cocaine, and the court sentenced him to a term of twenty years in the custody of the

3

Department of Corrections, with ten years to serve, ten years suspended, and five years of post-release supervision. Carson filed a motion for judgment notwithstanding the verdict (JNOV) or a new trial, which was denied, and a notice of appeal.

## ANALYSIS

¶8. Carson's appointed appellate counsel filed a brief arguing that there is insufficient evidence to support Carson's conviction or, in the alternative, that Carson is entitled to a new trial because the jury's verdict is against the overwhelming weight of the evidence. Carson then filed a pro se supplemental brief raising several additional issues. We address the issues raised by appointed counsel first and then turn to Carson's additional issues.

### I. Sufficiency and Weight of the Evidence

¶9. When we review the denial of a motion for a directed verdict or JNOV, our standard of review is de novo, but "the legal sufficiency of the evidence [is] viewed in a light most favorable to the State." *Johnson v. State*, 904 So. 2d 162, 166 (¶7) (Miss. 2005). "Essentially, all credible evidence supporting a defendant's guilt should be accepted as true, and all favorable inferences drawn from the evidence must be reconciled in the prosecution's favor." *Id.* "We determine if any rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Williams v. State*, 285 So. 3d 156, 159 (¶11) (Miss. 2019). "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements." *Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss. 2010). Rather, we must affirm the conviction as long as there is sufficient evidence for a rational juror to find that the State proved its case. *Id.*

4

¶10. We review a trial judge's denial of a motion for a new trial only for an abuse of discretion. *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017). Our standard of review is deferential because the "trial judge is in the best position to view the trial." *Id.* at 291 (¶18) (quoting *Amiker v. Drugs For Less Inc.*, 796 So. 2d 942, 947 (¶16) (Miss. 2000)). "The trial judge who hears the witnesses live, observes their demeanor and in general smells the smoke of the battle is by his very position far better equipped to [rule on a new trial motion]." *Id.* at 291-92 (¶18) (quoting *Amiker*, 796 So. 2d at 947 (¶16)).

¶11. In addition, when we review the denial of a motion for a new trial, we afford great deference to the jury and its verdict. *Little*, 233 So. 3d at 289 (¶1). The jury is the fact-finder, and this Court will not "assume[] the role of juror on appeal." *Id.* As the Supreme Court made clear in *Little*,

> [w]e do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury. Our role as [an] appellate court is to view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.

*Id.*

¶12. In the present case, Carson argues that the State failed to prove that he possessed cocaine. "Possession of a controlled substance may be actual or constructive . . . ." *Dixon v. State*, 953 So. 2d 1108, 1112 (¶4) (Miss. 2007). As our Supreme Court has explained,

> t]he concept of 'possession' is a question which is not susceptible to a specific rule. However, there must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing

5

that the drug involved was subject to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.

*Id.* (quoting *Curry v. State*, 249 So. 2d 414, 416 (Miss. 1971)).

¶13. In the present case, it is unnecessary for us to address directly the smaller amount of cocaine found in the center console of the Acadia or the issue of constructive possession. As discussed above, the jury found Carson guilty of possession of more than ten grams but less than thirty grams of cocaine. Miss. Code Ann. § 41-29-139(c)(1)(D). The cocaine found on the street weighed 13.825 grams, while the cocaine in the console weighed 0.298 grams. Thus, the jury necessarily found that Carson possessed the cocaine found on the street.

¶14. As this Court previously stated, "actual possession can be established if an officer witnesses the defendant tossing an object later found to be drugs." *Cooper v. State*, 145 So. 3d 1219, 1228 (¶34) (Miss. Ct. App. 2013) (citing *Dampeer v. State*, 989 So. 2d 462, 465 (¶9) (Miss. Ct. App. 2008); *Boyd v. State*, 634 So. 2d 113, 116 (Miss. 1994); *Lee v. State*, 767 So. 2d 1025, 1027 (¶8) (Miss. Ct. App. 2000)), *aff'd*, 145 So. 3d 1164 (Miss. 2014). "An officer's testimony stating that he observed the defendant throw the drugs is sufficient to show actual possession." *Id.* (quotation marks omitted) (citing *Lee*, 767 So. 2d at 1027 (¶8)); *accord Boyd*, 634 So. 2d 116 ("*Hicks* clearly stands for the proposition that actual possession of drugs can be established by testimony from an officer that he observed the defendant tossing an object which was subsequently located at the same site and, upon examination of the object, it was determined to be a controlled substance.").

¶15. Factually, this case is very similar to *Lee*. In *Lee*, law enforcement officers initiated

a traffic stop, but the defendant ran a stop sign and fled. *Lee*, 767 So. 2d at 1026 (¶2). While in pursuit, the officers observed the defendant "toss[] something out the window" of his car into the parking lot of an apartment complex before finally stopping his car. *Id.* The officers then returned to the area in which they had seen the defendant toss the object and "found a bag of marijuana and a chapstick vial which contained thirteen rocks of crack cocaine." *Id.* One officer "testified these items were consistent with what he perceived he had seen [the defendant] throw from the car window." *Id.* On appeal, the defendant argued that the evidence was insufficient to sustain his conviction; however, this Court affirmed his conviction because we concluded that "a reasonable fair-minded juror could find the testimony presented to be incriminating beyond a reasonable doubt." *Id.* at 1027 (¶9).

¶16.    The evidence in this case is substantially similar to the evidence in *Lee*. Investigator Heggins and Investigator Grady both testified that they observed Carson throw an object out of the window of the Acadia, they noted the location in which the object was thrown, and Grady found the bag of crack cocaine in that location. Grady specifically testified that he personally observed "[t]he driver [throw] a small plastic bag out of the front passenger window" of the Acadia. He further testified that he discovered the plastic bag with a large cookie of crack cocaine in the "same area where it was thrown out of the window." Also, as discussed above, another bag of crack cocaine, which appeared to contain smaller pieces broken off a cookie, was found in the center console of the Acadia. As in *Lee*, we conclude that the conviction must be affirmed because "a reasonable fair-minded juror could find the testimony presented to be incriminating beyond a reasonable doubt." *Id.*

7

¶17. In addition, Carson is not entitled to a new trial. When, as in this case, the evidence is in conflict, it is the jury's role to assess the witnesses' credibility and the weight of the evidence. *Little*, 233 So. 3d at 289 (¶1). "We do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury." *Id.* The jury's verdict was not "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.* Therefore, the trial judge did not abuse his discretion by denying Carson's motion for a new trial. *Id.* at 292 (¶21).

## II. Pro Se Claims

¶18. Carson raises a series of issues in his supplemental pro se brief. He first argues that his stop and arrest and the officers' search of the Acadia violated the Fourth Amendment. We disagree. To begin with, Carson failed to raise this issue at trial, so it is waived on appeal.[2] Nevertheless, we will address the issue briefly.

¶19. The officers had probable cause to initiate a traffic stop when they observed Carson committing an apparent traffic violation by stopping his car in the middle of the road.[3] The

---

[2] *Stevens v. State*, 458 So. 2d 726, 730 (Miss. 1984) ("The general rule is that a failure to object with specificity in the trial court below results in a waiver of review by this Court. The rule applies to Fourth Amendment claims; where the defendant fails to object to the admission of illegally obtained evidence, the objection is waived." (citation omitted)).

[3] *Martin v. State*, 240 So. 3d 1047, 1051 (¶12) (Miss. 2017) ("[P]robable cause to make a traffic stop exists . . . when a defendant commits a traffic violation and a law-enforcement officer observes the violation."); Miss. Code Ann. § 63-3-907 (Rev. 2013) ("Except where angle parking is permitted by local ordinance or usage, every vehicle stopped or parked upon a roadway where there is an adjacent curb shall be stopped or parked with the right-hand wheels of such vehicle parallel with and within twelve inches of the right-hand curb.").

8

officers then had probable cause to arrest Carson for the crime of fleeing a law enforcement officer after he drove away and failed to stop his vehicle in response to blue lights and sirens. Miss. Code Ann. § 97-9-72(1) (Rev. 2020). Finally, the officers were entitled to search the Acadia[4] after they had retrieved the cocaine they saw thrown from the vehicle and were in the process of lawfully arresting Carson.[5] Accordingly, the officers committed no Fourth Amendment violation by stopping and arresting Carson and searching the Acadia.

¶20. Next, Carson seems to argue that because he is innocent of the charge against him, his detention in the Warren County jail violated the Eighth Amendment's ban on cruel and unusual punishments. This issue is without merit because, as explained above, there is sufficient evidence to support Carson's conviction.

¶21. Next, Carson argues that his rights under the Confrontation Clause were violated because two of the three officers were not wearing body cameras,[6] and their car was not equipped with a dash camera. The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

---

[4] Although the Acadia was rented to Thomas, not Carson, that fact, standing alone, does not deprive Carson of standing to challenge the search. *Byrd v. United States*, 138 S. Ct. 1518, 1531 (2018) ("[T]he mere fact that a driver in lawful possession or control of a rental car is not listed on the rental agreement will not defeat his or her otherwise reasonable expectation of privacy.").

[5] *Arizona v. Gant*, 556 U.S. 332, 343 (2009) (holding "that circumstances unique to the vehicle context justify a search [of a vehicle] incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle" (quotation marks omitted)).

[6] Lieutenant Merritt was wearing a body camera. The footage was admitted into evidence at trial.

him." U.S. Const. amend. VI; *accord* Miss. Const. art. 3, § 26. Here, Heggins, Grady, and Merritt all testified and were subject to cross-examination. Accordingly, Carson's rights under the Confrontation Clause were not violated. The Confrontation Clause does not require police officers or patrol cars to be equipped with cameras.

¶22. Carson next asserts that the State's entire case hinges on "racial profiling." However, there simply is no evidence to support this claim.

¶23. Carson also asserts that his trial counsel provided ineffective assistance by not filing a motion to suppress. However, as explained above, Carson's stop and arrest and the search of the Acadia were all legal. Therefore, trial counsel's decision not to file a motion to suppress was not ineffective assistance.

¶24. Lastly, Carson argues that the trial court abused its discretion by giving the jury a "*Sharplin* instruction."[7] In *Sharplin*, our Supreme Court held that a "trial judge confronted by a hung jury" has two options if the "judge feels that there is a likelihood that the jury might reach a verdict." *Id.* The judge "may return the jury for further deliberations by simply stating to the jurors: 'Please continue your deliberations.'" *Id.* In the alternative, the judge may give the following approved instruction:

> I know that it is possible for honest men and women to have honest different opinions about the facts of a case, but, if it is possible to reconcile your differences of opinion and decide this case, then you should do so.
>
> Accordingly, I remind you that the court originally instructed you that the verdict of the jury must represent the considered judgment of each juror. It is your duty as jurors to consult with one another and to deliberate in view of reaching agreement if you can do so without violence to your individual

---

[7] *Sharplin v. State*, 330 So. 2d 591, 596 (Miss. 1976).

judgment. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you are convinced it is erroneous, but do not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. Please continue your deliberations.

*Id.*; *see also* MRCrP 23.4 cmt. (approving the above-quoted instruction).

¶25. During Carson's trial, after the jurors had deliberated about three hours, they sent a note to the judge that stated, "Currently, we are at a stalemate, 8 to 4. Unable to come to a unanimous verdict." After discussing the issue in chambers with counsel, the judge gave the jury an instruction that tracked the approved *Sharplin* instruction almost verbatim. The jury then deliberated about forty-five more minutes before returning a verdict. Because the trial judge complied with *Sharplin*, we find no error or abuse of discretion in his decision to give the instruction.[8]

**CONCLUSION**

¶26. The State presented sufficient evidence to convict Carson, and the trial judge did not abuse his discretion by denying Carson's motion for a new trial. In addition, Carson fails to identify any reversible error in his pro se brief. Accordingly, Carson's conviction and

---

[8] The State's brief on appeal asserts that during trial, defense counsel agreed that a *Sharplin* instruction was "worth a shot." The State then argues that Carson waived this issue because he "consented to the [*Sharplin*] instruction at trial." However, the State has misread the transcript. One of the prosecutors stated that a *Sharplin* instruction was "worth a shot." Carson's attorney stated that he thought a unanimous verdict was "probably beyond hope" and that he was "not interested in wasting time." In his reply brief, Carson argues—for the first time—that the trial judge erred by addressing this issue in chambers without Carson present. We decline to address this argument because it was raised for the first time in a reply brief. *See, e.g.*, *Ray v. State*, 238 So. 3d 1118, 1122 n.3 (Miss. 2018) ("[T]his Court does not consider issues raised for the first time in an appellant's reply brief.").

sentence are **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**